**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASTOR PROFESSIONAL SEARCH, LLC, ) <br> on behalf of themselves and all others similarly ) <br> situated, ) <br> ) <br>           **Plaintiff,** ) <br> ) <br>       v. ) <br> ) <br> MEGAPATH CORPORATION, ) <br> a Delaware Corporation, ) <br> ) <br>           **Defendants.** ) | No. 1:12-cv-02313 <br> Hon. Joan H. Lefkow |

**OPINION AND ORDER**

On March 28, 2012, plaintiff Astor Professional Search, LLC ("Astor"), a legal recruiting firm, filed this putative class action lawsuit[1] for breach of contract (Count I), fraud/intentional misrepresentation (Count II),[2] unjust enrichment (Count III), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILL. COMP. STAT. 505/1 *et seq*. (Count IV), against defendant MegaPath Corporation ("MegaPath"),[3] an internet and e-mail hosting provider. Astor alleges that MegaPath knew that e-mails from its servers were being refused or "bounced back" by the most popular internet domains yet it never alerted its clients and refused to refund their monthly fees. MegaPath now moves to dismiss the

---

1 Astor has moved to certify two classes: (1) All consumers in the United States who paid for e-mail hosting services from MegaPath on or after January 2011 (for Counts I and III); and (2) All consumers in the State of Illinois who paid for e-mail hosting services from MegaPath on or after January 2011 (Count IV). (Dkt. #3.)

2 Astor has since voluntarily dismissed Count II. (*See* Dkt. #22 Resp. at 6 n.2.)

3 Defendant asserts that its correct name is MegaPath Corporation, not MegaPath, Inc., as alleged in the complaint. The case caption has been changed accordingly.

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of Astor's request for punitive damages under Federal Rule of Civil Procedure 12(f).[4] For the reasons set forth herein, MegaPath's motion (Dkt. #17) will be granted in part and denied in part.[5]

## BACKGROUND[6]

Astor, an Illinois limited liability company with its headquarters in Chicago, is a legal recruiting firm. In 2009, it contracted with Speakeasy Broadband Services, LLC ("Speakeasy") to provide internet hosting and e-mail services in return for a $15 monthly fee. In 2010, MegaPath, a Delaware corporation headquartered in Costa Mesa, California, merged with Speakeasy and began providing these services to Astor. Whether setting up interviews, communicating job offers, or counseling clients prior to meetings, Astor depended on properly functioning e-mail to communicate with attorneys and law firms alike.

In August 2011, Astor first learned that its clients were not receiving e-mails sent through MegaPath's servers. Astor later learned that these e-mail problems began as early as January 2011. Astor contacted MegaPath multiple times in August and September 2011, yet the e-mail problems persisted. On September 23, 2011, a MegaPath representative informed Astor for the first time that the company was aware of the e-mail problems and acknowledged that at one

---

[4] MegaPath also moves to deny Astor's motion for class certification because Astor failed to properly notice the motion for presentment before the court. Although Northern District of Illinois Local Rule 78.2 permits the court to deny a motion that is not properly noticed for presentment, the court declines to do so here. Astor filed its motion for class certification pursuant to *Damasco* v. *Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011), which allows class action plaintiffs to preserve their class claims by moving to certify the class at the same time they file their complaint. Class discovery in this case has not commenced and the motion is not fully briefed. (*See* Dkt. #3.)

[5] The court possesses jurisdiction over Astor's claims pursuant to 28 U.S.C. § 1332(d)(2) because there is minimal diversity and the amount in controversy exceeds $5 million.

[6] The facts recounted in this section are taken from the complaint and are presumed true for purpose of resolving the pending motion.

point, eleven of the most popular e-mail hosting services, such as Gmail, Yahoo, Hotmail, AT&T, and Comcast, were blocking e-mails sent from MegaPath's servers. The MegaPath representative, however, declined to provide Astor with a refund for the months of lost service. MagaPath has never notified any of its other customers of the e-mail delivery problems and these problems persist for thousands of MagaPath's customers.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

Rule 12(f) empowers a court to strike from any pleading any insufficient defense or any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored, but are appropriate if "the language in the pleading has no relation to the controversy and is unduly prejudicial." *Circuit Sys., Inc.* v. *Mescalero Sales, Inc.*,

925 F. Supp. 546, 548 (N.D. Ill. 1996); *see McDowell* v. *Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 693 (N.D. Ill. 2009) ("granting a motion to strike is a drastic measure . . . and a reviewing court ordinarily will not strike a pleading unless the court can confidently conclude that it is prejudicial to the objecting party").

## ANALYSIS

MegaPath moves to dismiss the complaint arguing that it fails state a claim under Rule 12(b)(6). Additionally, MegaPath moves to strike Astor's request for punitive damages under Rule 12(f).

### I. Motion to Dismiss Under Rule 12(b)(6)

As an initial matter, MegaPath argues at length that the complaint should be dismissed because Astor fails to plead the requisite elements of any of its causes of action. (*See* Mot. to Dismiss at 8-15.) Although the court's analysis will discuss the elements, MegaPath is reminded that "there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions . . . listed in Rule 9." *Walker* v. *Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *accord Simpson* v. *Nickel*, 450 F.3d 303, 305 (7th Cir. 2006); *see also Christensen* v. *Cnty. of Boone, Ill.*, 483 F.3d 454, 466 (7th Cir. 2007) ("[W]hen federal courts entertain claims under state law . . . it is not necessary to plead facts matching elements of legal theories."). This position holds true even after *Twombly* and *Iqbal*. *See Swanson* v. *Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *Hatmaker*, 619 F.3d at 743; *Wessel* v. *Vill. of Monee*, No. 04 C 3246, 2010 WL 2523574, at *5 (N.D. Ill. June 14, 2010); *see generally* 5 CHARLES ALAN WRIGHT et al., FEDERAL PRACTICE & PROCEDURE CIVIL § 1216 (3d ed.); 4 ELIZABETH M. BOSEK et al., CYCLOPEDIA OF FEDERAL PROCEDURE § 14:160 (3d ed.); *but see Riley* v. *Vilsack*, 665 F. Supp. 2d 994, 1002 (W.D. Wis. 2009). Thus, to survive a motion to dismiss, Astor need not plead facts

that establish each element of every claim; rather it need only "describe the claim in sufficient detail to give [MegaPath] fair notice of what the claim is and the grounds upon which it rests" and "plausibly suggest that [it] has a right to relief, raising that possibility above a speculative level." *E.E.O.C.* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations and citation omitted).

### A. Count I: Breach of Contract

MegaPath first moves to dismiss Astor's breach of contract claim. The complaint alleges that in 2009, Astor contracted with Speakeasy, which was later acquired by MegaPath, to provide internet and e-mail hosting services in exchange for a monthly fee of $15. (Compl. ¶ 10.) MegaPath also contracted with other members of the class to provide similar services. (*Id.* ¶ 26.) Astor's and MegaPath's agreement consisted of an offer, acceptance and consideration by both parties such that the contract was valid. (*Id.* ¶ 27.) Astor consistently fulfilled its obligation under the contract by timely paying all fees and dues owed as did other members of the class. (*Id.* ¶¶ 28, 29.) MegaPath breached its agreements by failing to adequately deliver e-mail services and Astor and the other class members were harmed as a result. (*Id.* ¶¶ 31, 32.) These allegations are sufficient to give MegaPath fair notice of the basis of the claim against it. *See AT&T Corp.* v. *Van Ru Credit Corp.*, No. 10 C 7059, 2011 WL 211574, at *1 (N.D. Ill. Jan. 21, 2011) (denying motion to dismiss where plaintiff "alleg[ed] the existence of a specific contractual relationship between itself and [defendant] and a breach of that contract").[7]

---

[7] Astor's complaint is distinguishable from that in *Imagenetix, Inc.* v. *Walgreen Co.*, No. 11 CV 8277, 2012 WL 1231067 (N.D. Ill. Apr. 12, 2012), upon which MegaPath relies, because unlike in *Imagenetix*, the complaint contains allegations related to the contract's terms, *see* Compl. ¶¶ 10 & 30, and it is reasonable to assume that Astor and MegaPath entered into some kind of binding agreement.

B. Count III: Unjust Enrichment

MegaPath next argues that the complaint fails to state a claim for unjust enrichment because Astor has alleged that an express contract governs the parties' relationship.[8] To state a cause of action based on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel* v. *Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Serv., Inc*. v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (Ill. 1989)). "Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 180 Ill. Dec. 271 (Ill. 1992) (internal quotations and citation omitted).

Rule 8(d) allows a party to plead alternative and inconsistent claims, as Astor has attempted to do here. *See* Fed. R. Civ. P. 8(d)(2)-(3); Compl. Count III. When a party incorporates allegations of a specific contract into its unjust enrichment claim, however, dismissal may be warranted. *See, e.g., The Sharrow Grp.* v. *Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) ("Under Illinois law, . . . unjust enrichment [is] unavailable where the parties have entered into an express contract."); *Canadian Pac. Ry. Co*. v.

---

[8] MegaPath also argues that Count III must be dismissed because Astor cannot demonstrate that MegaPath committed an unfair practice under the ICFA. *See Cleary* v. *Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."); *see Siegel*, 612 F.3d at 937 (affirming dismissal of unjust enrichment claim where ICFA claim was not viable); *Oshana* v. *Coca-Cola Co*., 472 F.3d 506, 515 (7th Cir. 2006) (unjust enrichment claim cannot proceed without proof of deception). Because Astor will have an opportunity to amend its ICFA claim, *see* Part I.C., *infra*, discussion of this argument is best left for another day.

*Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003) ("While Plaintiff is entitled . . . to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties['] relationship.").

Here, Astor incorporates some of its contractual allegations into its unjust enrichment claim. (*See* Compl. ¶ 37 (incorporating ¶¶ 1-23 and 32-35 into Count III); *id.* ¶ 10 ("[I]n 2009, Plaintiff contracted with Speakeasy --- later acquired by Megapath --- to provide Plaintiff with internet and e-mail hosting services in exchange for a monthly fee of $15."); *id.* ¶ 32 ("As a direct and proximate result of MegaPath's breach of contract, Plaintiff and the other Class members sustained damages[.]"). The court will allow Astor leave to file an amended complaint omitting reference to an express contract in its unjust enrichment claim.

### C. Count IV: ICFA

MegaPath argues that Count IV must be dismissed because it rests on the same conduct as Astor's breach of contract claim, and it fails to adhere to the heightened pleading standard of Rule 9(b).[9] The ICFA provides a remedy for "[u]nfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions. 815 ILL. COMP. STAT. 505/2. It "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel*, 612 F.3d at 934 (quoting *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (Ill. 2002)). The elements of an ICFA claim are "(1)

---

9  Given that Astor will be permitted to file an amended complaint, the court declines to address MegaPath's third argument that the complaint fails to plausibly suggest that MegaPath committed an "unfair practice" under the Act.

a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Id.*

Under the ICFA, a plaintiff can maintain a claim that is premised on either deceptive or unfair practices. *See Robinson*, 775 N.E.2d at 960. In its response brief, Astor indicates that it intends to proceed under the "unfair practice" prong of the Act, although it makes no such indication in its complaint. (*See* Resp. at 8-9.) An unfair practice is one that offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers. *Robinson*, 775 N.E.2d at 961. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (internal quotation marks omitted); *see Ciszwski* v. *Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at \*\*2-4 (N.D. Ill. June 2, 2010) (detailing the requirements of "unfair practice" claim).

MegaPath first argues that Count IV must be dismissed because it is predicated on the same acts as Astor's breach of contract claim.[10] The Illinois Supreme Court has held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill. 2d 100, 296 Ill. Dec. 448 (Ill. 2005) (collecting cases); *see Greenberger* v. *GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract."); *see also Lake Cnty. Grading Co. of Libertyville, Inc.* v. *Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1116, 275 Ill. App. 3d 452, 211 Ill. Dec. 299 (Ill. 1995)

---

10  Astor makes no attempt to address this argument in its response brief.

("[I]f litigants could invoke [ICFA] merely by alleging an intentional or fraudulent breach of a contract, common-law breach of contract actions would be supplemented in every case with an additional and redundant remedy.").

A review of the complaint demonstrates that the breach of contract claim and the ICFA claim are based on largely the same factual allegations. (*See* Compl. ¶¶ 25 & 42 (incorporating the factual allegations of the previous paragraphs into Counts I and IV)). Thus, Count IV appears to be "merely a breach of contract claim clothed as a violation of [ICFA]." *Sklodowski* v. *Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196, 358 Ill. App. 3d 696, 295 Ill. Dec. 38 (Ill. App. Ct. 2005); *see W. Howard Corp.* v. *Indian Harbor Ins. Co.*, No. 1:10-CV-7857, 2011 WL 2582353, at *6 (N.D. Ill. June 29, 2011) (dismissing IFCA claim where the plaintiff "premise[d] both its statutory and common law fraud claims on essentially the same conduct it alleges in [its breach of contract claim]"). Although Astor may be able to overcome this deficiency by demonstrating that MegaPath's actions implicate the consumer protection purpose of the Act, *see Llames* v. *JP Morgan Chase & Co.*, No. 11 CV 5899, 2012 WL 1032910, at *3 (N.D. Ill. Mar. 23, 2012), it has failed to clearly articulate such a purpose here. The court will therefore grant MegaPath's motion to dismiss Count IV without prejudice and allow Astor leave to replead its ICFA claim consistent with *Avery* and *Llames* and to plead facts consistent with its intent to proceed under the "unfair practice" prong of the Act.[11]

---

11 The Seventh Circuit has stated that the heightened pleading standard of Rule 9(b) need not apply to allegations of an unfair practice. *See Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."); *see also Sindles* v. *Saxon Mortg. Servs., Inc.*, No. 11 C 7224, 2012 WL 1899401, at *4 (N.D. Ill. Mary 22, 2012) ("The need for heightened pleading requirements applies only to the deceptive acts prong of the ICFA.").

### D. Whether the Complaint Allegations as a Whole are Plausible

There is one more issue the court feels compelled to address. MegaPath argues that the allegations in the complaint do not comply with the plausibility standard set forth in *Iqbal* and *Twombly* because they are consistent with lawful conduct. *See Twombly*, 550 U.S. at 556 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [success on the claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'").

In support, MegaPath presents a number of facts outside the four corners of the complaint and proposes a myriad of reasons why someone attempting to send e-mails via a web-host might experience delivery problems. From these additional facts and reasons, MegaPath concludes that "the more plausible explanation" for the allegations in the complaint is that "a subscriber utilizing a particular shared IP address had been blacklisted" and that MegaPath "was working . . . to rectify the situation." (Dkt. #18, Mot. to Dismiss Memo. at 5, 7-8.)

At the threshold, the court declines to consider the additional facts set forth by MegaPath in its brief because they are not a part of the pleadings. *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 12(d). Moreover, simply presenting an alternative explanation for the facts alleged in the complaint is insufficient to demonstrate that the complaint fails to plausibly suggest a right to relief. As explained by the Seventh Circuit,

> "Plausibility" in [the *Twombly/Iqbal*] context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal*, "the plausibility standard is not akin to a probability requirement." 129 S. Ct. at 1949 (quotation marks omitted). As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to

10

> go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.

*Swanson*, 614 F.3d at 404; *see Reger Dev., LLC* v. *Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (Even after *Twombly* and *Iqbal*, "a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'") (quoting *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

The complaint meets this standard. It alleges that, beginning in January 2011 and continuing for at least 10 months, MegaPath knew that e-mails sent through its servers were not reaching their intended recipients and it concealed this fact from Astor and other paying customers. When confronted with this problem, MegaPath refused to refund Astor's monthly service fee and continued to conceal the problem from others. Construing all reasonable inferences in Astor's favor, the court concludes that these allegations, and those already discussed, are sufficient to plausibly suggest that MagaPath breached its contract with Astor or was unjustly enriched by its conduct.

## II.     Motion to Strike under Rule 12(f)

Lastly, MegaPath moves to strike Astor's request for punitive damages under Rule 12(f), arguing that Astor has failed to plead any facts demonstrating that MegaPath "showed malice, evil motive, or reckless disregard for the rights of others." (Compl. ¶ 46.) Rule 12(f) allows the court to strike any "redundant, immaterial, impertinent, or scandalous matter," but does not permit the court to strike a damages request under the reasons advanced by MegaPath. Fed. R. Civ. P. 12(f); *see Arenson* v. *Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202, 1214 (N.D. Ill. 1995) (denying similar request because "the lack of evidence in the Complaint to

support a theory of recovery . . . does not fit into any category of material the Court is authorized to strike under 12(f)"). Moreover, the ICFA expressly provides for the recovery of punitive damages. *See* 815 ILL. COMP. STAT. 505/10a(a) (the court "may award actual economic damages or any other relief which the court deems proper"); *Oshana*, 472 F.3d at 512 ("the ICFA permits recovery of punitive damages"). As such, MegaPath's motion to strike Astor's request for punitive damages is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss [#17] is granted in part and denied in part. The motion is granted without prejudice as to Counts III and IV and denied as to Count I. Plaintiffs are given leave to file an amended complaint by April 10, 2013. This case will be called for a status hearing on April 16, 2013.


Dated: March 27, 2013            Enter: _____
                                        JOAN HUMPHREY LEFKOW
                                          United States District Judge